U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

JUN 21  4 23 PM '01

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Audrey M. Stephenson,
     Claimant

     v.                                    Civil No. 00-391-M
                                           Opinion No. 2001 DNH 118
William A. Halter,
Acting Commissioner, Social
Security Administration,
     Respondent

**O R D E R**

This is an appeal of a decision by the Acting Commissioner
of the Social Security Administration, denying widow's disability
insurance benefits under Title II of the Social Security Act (the
"Act") to claimant, Audrey M. Stephenson.  See 42 U.S.C. §
405(g).[1]  The court has before it the Commissioner's motion to
affirm his order denying claimant's application for benefits and
claimant's motion to reverse that decision.  In support of her
motion, claimant says the Administrative Law Judge ("ALJ")
committed several errors in reaching the conclusion that she was

---

     [1]     Initially, claimant also filed an application for
disability benefits under Title II based upon her own work
record, but subsequently withdrew that application.  See
Transcript at 11 and 36.

not disabled within the meaning of the Act. For the reasons set forth below, the claimant's motion is denied and the Commissioner's motion is granted.

**Factual Background**

I. <u>Procedural History</u>.

In September of 1989, claimant's husband passed away. At the time, he was fully insured for purposes of the Social Security disability insurance program. Consequently, claimant remained insured for purposes of widow's disability insurance benefits until September 30, 1996. <u>See</u> 20 C.F.R. § 404.335(c)(1) (providing that a widow who is at least 50 years old, disabled, and otherwise qualified, is eligible for benefits for seven years after the death of her spouse).[2]

---

[2] Prior to 1991, the burden imposed upon claimants seeking widow's disability benefits was more substantial than that imposed on wage earners seeking Title II disability benefits. <u>See, e.g.</u>, <u>Cassas v. Secretary of Health and Human Services</u>, 893 F.2d 454, 457 (1st Cir. 1990). In 1991, however, Congress amended the standard under which applications for widow's disability benefits were reviewed, making it the same as that applied to other Title II disability claims. <u>See</u> 42 U.S.C. §§ 402(e)(1)B) and 423(d)(1)(A). <u>See generally</u> <u>Bentley v. Apfel</u>, 106 F. Supp. 2d 371, 373 (D. Conn. 2000) ("[E]ffective January 1, 1991, [Congress] made the standard for widows' claims the same as the standard applied to other Title II disability claims, thus requiring a widow to prove only that she was unable to perform <u>substantial gainful activity</u>.") (emphasis in original); <u>Tackett v. Chater</u>, 897 F. Supp. 332, 334 (E.D. Ky. 1996) (same).

On August 26, 1997, claimant filed an application for widow's disability insurance benefits under Title II of the Social Security Act, alleging that she had been unable to work since March 31, 1989, due to a spinal condition, shoulder problems, emphysema, a thyroid condition, colitis, and arthritis.[3] Her application was denied initially and on reconsideration. On October 27, 1998, claimant and her attorney appeared before an ALJ, who considered claimant's application de novo. On December 23, 1998, the ALJ issued his order, concluding that claimant retained the residual functional capacity to perform her past relevant work as a clerical or secretarial worker. Accordingly, the ALJ ruled that claimant was not disabled, as that term is defined in the Act, at any time through the expiration of her eligibility for widow's benefits.

------

[3] In her motion, claimant says, "It is not clear why 03/31/89 was listed on her initial application as the alleged onset date, but in later correspondence with the ALJ, claimant's counsel stated that the disability date, while difficult to determine accurately, was not being alleged to have occurred before September 28, 1995." Claimant's motion at 3. The precise onset date of claimant's alleged disability is, however, immaterial since the ALJ concluded that, notwithstanding subsequent efforts to enter the workplace, claimant had not engaged in substantial gainful activity since March 31, 1989. The more relevant date is September 30, 1996, the day on which claimant's eligibility for widow's disability benefits expired. As of that date, the ALJ concluded that claimant was not disabled within the meaning of the Act.

Claimant then sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied that request, thereby rendering the ALJ's decision a final decision of the Commissioner, subject to judicial review. On August 11, 2000, claimant filed an action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act. Subsequently, claimant filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 4). The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 6). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 7), need not be recounted in this opinion.

## Standard of Review

I.  Properly Supported Findings by the ALJ are
    Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[4] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the claimant's position. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court]

---

[4] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

5

may not reverse merely because substantial evidence exists for the opposite decision."). See also Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health and Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II. The Parties' Respective Burdens.

An individual seeking widow's disability benefits is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, the claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform. See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520. Ultimately, a claimant is disabled only if her:

physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Discussion

I. Background - The ALJ's Findings.

In concluding that Ms. Stephenson was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520. Accordingly, he first determined that claimant's temporary employment as a cashier from 1993 through 1995 constituted an unsuccessful work attempt and concluded that she had not been engaged in substantial gainful employment since her alleged onset of disability on March 31, 1989. Next, he concluded that claimant suffers from a spinal condition, shoulder problem, and emphysema - ailments that restrict her ability to perform basic work activities. Nevertheless, the ALJ determined that claimant had no impairment or combination of impairments that met the criteria of any of the listed impairments. He also concluded that the medical evidence and testimony supported the conclusion that, to the extent she suffered from a thyroid condition, colitis, or arthritis prior to September 30, 1996, those ailments did not have more than a minimal impact on her ability to perform basic work activities and, therefore, were not

10

"severe," as that term is used in the Act and pertinent regulations.

The ALJ next concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of a range of light work, limited by her inability to lift and carry more than 20 pounds occasionally, stand and walk more than six hours in an eight hour day, sit more than six hours in an eight hour day, or perform tasks that required more than occasional orverhead reaching and bending.[5] He also noted that claimant's RFC was further limited by the following non-exertional factor: an inability to work in environments with concentrated exposure to fumes, odors, dusts, and gases, due to her emphysema.

---

5    "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

In light of claimant's ability to perform work at the light exertional level, as reduced by the limitations discussed above, the ALJ concluded that she retained the capacity to perform her prior work as a clerical or secretarial worker, employment that is classified as being "sedentary" in nature (i.e., less physically demanding than the range of light work the ALJ concluded claimant could perform).[6] Consequently, at step four of the sequential analysis, the ALJ concluded that claimant was not disabled within the meaning of the Act and denied her request for widow's disability benefits.

**Discussion**

In support of her motion to reverse the decision of the Commissioner, claimant advances several arguments. First, she claims the ALJ improperly discounted her subjective complaints of pain. Second, she says the ALJ failed to properly consider the combined effect of her various ailments on her ability to engage

---

[6]    In noting that secretarial or clerical work is classified as being sedentary in nature, the ALJ made reference to "section 210.363.030" of the Dictionary of Occupational Titles. Transcript at 17. Presumably, that is a typographical error (since the most recent edition of that publication contains no such section) and the court assumes that the ALJ intended to reference section 201.362.030, entitled "Secretary (clerical)."

12

in substantial gainful activity. Next, she claims the ALJ erred by treating her prior employment as a secretary as "past relevant work," since she was employed as a secretary only briefly and sporadically in the past 15 years. Finally, claimant says the ALJ erred in concluding that she was "approaching advanced age," rather than "advanced age," and should have called upon a vocational expert before determining whether her impairments, particularly her arthritis, precluded a return to secretarial or clerical work.

I.   Subjective Complaints of Pain.

The parties agree that claimant's medical condition is one that can, and in fact does, cause her pain. They disagree with regard to the extent of that pain and whether it is disabling. Plainly, the ALJ concluded that claimant's complaints of pain were somewhat exaggerated and her impairments did not preclude her from performing a limited range of light work.

To determine whether a claimant is disabled, an ALJ must determine her RFC which, as noted above, involves an assessment of her ability to perform work-related tasks. In conducting that

inquiry, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as her own description of those physical limitations, including her subjective complaints of pain. See Manso-Pizzarro v. Secretary of Health and Human Services, 76 F.3d 15, 17 (1st Cir. 1996). When the claimant has demonstrated that she suffers from an impairment that could reasonably be expected to produce the pain or side effects she alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit her ability to do basic work activities.

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by the treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual . . ..
>
> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must

consider in addition to the objective medical evidence
when assessing the credibility of an individuals'
statements.

Social Security Ruling ("SSR") 96-7p, Assessing the Credibility
of an Individual's Statements, (July 2, 1996). Those factors
include the claimant's daily activities; the location, duration,
frequency, and intensity of the claimant's pain or other
symptoms; factors that precipitate and aggravate the symptoms;
the type, dosage, effectiveness, and side effects of any
medication the claimant takes (or has taken) to alleviate pain or
other symptoms; and any measures other than medication that the
claimant receives (or has received) for relief of pain or other
symptoms. Id. See also Avery, 797 F.2d at 23; 20 C.F.R.
§ 404.1529(c)(3).

It is the ALJ's role to assess the credibility of claimant's
asserted inability to work in light of the medical record, to
weigh the findings and opinions of both "treating sources" and
other doctors who have examined her and/or reviewed her medical
records, and to consider the other relevant factors identified by
the regulations and applicable case law. When properly supported
by record evidence, such credibility determinations are entitled

to substantial deference from this court.  <u>See, e.g.</u>, <u>Irlanda Ortiz</u>, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts").

Here, the ALJ discussed claimant's medical history and the various treatments she had received, acknowledged her use of pain medications (Tylenol #3 and Advil), and discussed her daily range of activities (e.g., her ability to drive and perform limited household chores).  He also pointed out that:

> None of the medical professionals in the record [has] suggested or implied that the claimant was disabled. Medical examinations of the claimant have consistently shown that the claimant has had a reasonably good range of motion and strength levels, though the records also noted that the claimant experienced some discomfort. Additionally, there is nothing in the record to indicate that Dr. Bulman, her treating physician, Dr. Llewellyn or any other medical professional in the record believe[s] that the claimant was totally disabled during the prescribed period.

Transcript at 15.  It is, therefore, apparent that the ALJ properly considered all of the relevant factors in reaching the

16

conclusion that claimant's acknowledged pain and discomfort did not preclude her from performing a range of light work.  Because the ALJ's conclusions are supported by substantial evidence, they are binding upon the court.  See 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). See also Tsarelka v. Secretary of Health and Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

## II.   The Combined Effects of Claimant's Ailments.

When determining whether a claimant retains the residual functional capacity to engage in substantial gainful activity, an ALJ must consider the combined effect of not only the claimant's severe impairment(s), but his or her non-severe impairment(s) as well.  See 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined

17

effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). <u>See generally</u> <u>Loza v. Apfel</u>, 219 F.3d 378 (5th Cir. 2000).

With regard to her arthritis and colitis, claimant testified that both ailments impaired her ability to work. The ALJ acknowledged the existence of claimant's arthritis and colitis, but concluded that neither illness constituted a significant impairment and did not, either alone or in combination with her other impairments, interfere with her ability to function in any meaningful way. Transcript at 13 ("The claimant has been diagnosed with arthritis, but her arthritis did not manifest in a significant impairment nor interfere meaningfully in the claimant's ability to function. The claimant's colitis has only been treated recently, after her prescribed period, after many years of no treatment at all."). Accordingly, the ALJ concluded that claimant's arthritis and colitis were not, whether viewed individually or in combination, "severe." Again, while the relative paucity of records relating to claimant's medical history (particularly her arthritis) makes it difficult to

18

precisely determine the extent of her impairments, the court cannot conclude that the ALJ's determination is based on less than substantial evidence.[7]

Having properly determined that claimant's arthritis and colitis were not severe - that is, neither had a significant effect on claimant's ability to perform basic work activities - the ALJ was not required to address those ailments in considering whether claimant retained the residual functional capacity to resume her past relevant work. Although an ALJ must initially consider all of a claimant's impairments, regardless of their severity, only those that alone or in combination with others are severe are considered throughout the disability determination process. See 20 C.F.R. § 404.1523 ("If we do find a medically severe combination of impairments, the combined impact of the

---

[7] For example, claimant has called the court's attention to only a single reference in her medical records relating to her arthritis. See Transcript at 342 (a medical note from indicating that on April 26, 1995, claimant complained of arthritis in her hands). The records also contain a medical note dated October 10, 1986, that arguably refers to claimant's arthritis. In it, a treating physician reported that claimant complained that her "knee and fingers ache and swell." Transcript at 318. The non-treating physicians who reviewed claimant's medical history did, however, take those records into account but, like the ALJ, concluded that claimant's "arthritis does not produce a significant impairment." Transcript at 352.

19

impairments will be considered throughout the disability determination process."). Here, the ALJ concluded that neither claimant's arthritis nor her colitis contributed in any meaningful way to further restrict her ability to engage in substantial gainful activity. Consequently, the ALJ did not err in failing to discuss claimant's arthritis and/or colitis when, at step four of the sequential analysis, he concluded that she was capable of returning to her past relevant work.

## III. Claimant's Past Relevant Work.

Claimant asserts that the ALJ erred by determining that her prior employment as a secretary constituted "past relevant work." She says that because she had only been employed in that capacity from 1978 until 1982 and then again in 1984, such employment was both too brief and too far removed temporally to properly be deemed past relevant work.[8] She also argues that, due to technological changes affecting secretarial and clerical work,

---

[8] With regard to her employment as a secretary in 1984, claimant asserts that she held that position for too short a period of time to properly view it as past relevant work. Initially, however, claimant represented to the Social Security Administration that she performed that job "for about a year." Transcript at 385. At the hearing before the ALJ, she reaffirmed that statement. Transcript at 39. Later, however, she testified that she worked there for "not very long." Transcript at 45.

she no longer retained the necessary skills to act in that capacity. The pertinent regulations, however, undermine those arguments and provide:

> We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15-year rule is intended to insure that remote work experience is not currently applied.

20 C.F.R. § 404.1565. Even if, as claimant now asserts, she worked as a secretary only "briefly" in 1984, she does not claim that she failed to hold that position long enough to learn the basic skills necessary to properly perform the job. Consequently, the record supports the ALJ's implicit conclusion that claimant: (1) worked as a secretary within 15 years; (2) such employment lasted long enough for her to learn the essential elements of, and skills necessary to perform, that job; and (3) it was substantial gainful activity. The ALJ was, therefore,

21

entitled to conclude that claimant's employment as a secretary constituted past relevant work.

The cited regulation also contemplates that, during the intervening years between the time during which claimant worked and the present, some technological changes likely occurred in the workplace. Accordingly, notwithstanding claimant's lack of familiarity with some of the technological tools currently utilized by those holding secretarial or clerical positions, the court cannot conclude that the ALJ erred in determining that claimant's prior employment as a secretary constitutes past relevant work.

IV. Vocational Expert and Claimant's Age.

Claimant's arguments concerning her age and the ALJ's failure to call a vocational expert provide little support for her motion to reverse the Commissioner's decision. As of September 30, 1996, the date on which her insured status for purposes of widow's disability benefits lapsed, claimant was 56

years old.  Consequently, the ALJ erred in concluding that she was "approaching advanced age," rather than "advanced age."[9]

As claimant acknowledges, however, that error would have been meaningful only if the ALJ had concluded, at step four of the sequential analysis, that she was incapable of performing her past relevant work as a secretarial or clerical worker and, therefore, proceeded to step five.  Stated somewhat differently, claimant's "advanced age" was only meaningful at step five of the sequential analysis.  However, the ALJ never proceeded to that step; instead, at step four, he concluded that she was capable of performing her past relevant work and, therefore, was not disabled.  Consequently, the ALJ's erroneous reference to claimant as having been "approaching advanced age" does not support either reversal of his decision or remand for further proceedings.

Similarly, the ALJ's failure to call a vocational expert did not amount to reversible error.  The ALJ concluded that

---

[9]     The regulations define "advanced age" as including all individuals who are 55 and older, while those who are between 50 and 54 years old are considered "closely approaching advanced age."  See 20 C.F.R. § 404.1563.

23

claimant's arthritis did not have more than a minimal impact on her ability to engage in substantial gainful activity. As noted above, that conclusion is supported by substantial evidence in the record. Consequently, there was no need to consult with a vocational expert to assess the impact of claimant's arthritis on her ability to function in a clerical or secretarial position.

## Conclusion

While there is no doubt that claimant suffers from severe impairments that cause her some measure of pain and discomfort, there is simply insufficient evidence in the record to warrant the conclusion that she is disabled, as that term is used in the Act. More to the point, however, the court cannot conclude, on the record presented, that the ALJ's disability determination is not supported by substantial evidence. Accordingly, claimant's motion to reverse the decision of the Commissioner (document no. 4) is denied and the Commissioner's motion to affirm his decision (document no. 6) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

June 21, 2001

cc:  John P. Maynard, Esq.
     David L. Broderick, Esq.

25